In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

## NO. 09-20-00095-CR
_____

## VALERIA JOHNSON TENNON, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 435th District Court**
**Montgomery County, Texas**
**Trial Cause No. 19-03-03235-CR**

## MEMORANDUM OPINION

After pleading guilty to allegations in an indictment charging her
with unlawfully appropriating "monetary funds" with an "aggregate
value of greater than $300,000," Valeria Johnson Tennon sought the trial
court's permission to withdraw her plea.[1] The trial court denied her

---

[1]Tex. Penal Code Ann. § 31.09.

1

request to withdraw her plea, assessed a seventy-year sentence, and then denied her motion for new trial.

In two issues, Tennon argues (1) the trial court abused its discretion in refusing to allow her to withdraw her plea, and (2) a new trial is required because she received ineffective assistance of counsel from the attorneys she retained to represent her against the charges the State brought against her in the case. Because the record does not support her claim that the trial court abused its discretion when it rejected her motions to withdraw her plea, and because she has not met her burden to demonstrate she received ineffective assistance of counsel, her issues lack merit, so we will affirm.

## Background

In March 2019, Tennon was re-indicted on a charge of aggregate theft. The amended indictment alleges that between November 2015 and December 2018, Tennon unlawfully appropriated monetary funds with an aggregate value of more than $300,000 from a number of entities and individuals who are named in the indictment. When the amended indictment was filed, Tennon was represented by two attorneys, who had been appointed by the court and who had been representing her for

2

around a year on an indictment charging her with aggregate theft of a monetary fund involving a value of more than $300,000.

Tennon told the trial court that she wanted to hire an attorney to represent her during a docket call in March 2019, explaining that she no longer wanted the attorneys the court had appointed to represent her to continue to represent her in the case. The attorney that Tennon retained a short time later is an attorney named Tristan LeGrande.

In April 2019, LeGrande appeared at a docket call in Tennon's case based on the information in the Clerk's Record. In August 2019, which was the day before Tennon's trial was scheduled to begin, Tennon told the trial court during the docket call that day that she wanted to enter a plea. The trial court conducted a hearing on Tennon's plea that day.

The record from the hearing on Tennon's plea shows the following exchange occurred in the proceedings on Tennon's plea:

> THE COURT: Ms. Tennon, if you will raise your right hand?
>
> (Defendant sworn in.)
>
> THE COURT: Ms. Tennon, you are set today for a call docket; is that correct or no -- you are set tomorrow to begin a trial?
>
> [PROSECUTOR]: Yes, Your Honor.

3

THE COURT: All right. And at some point, you made a decision to enter a plea; is that true?

THE DEFENDANT: Yes.

THE COURT: Understanding you have a right to have a trial by jury on this matter -- do you understand that?

THE DEFENDANT: Yes.

THE COURT: And are you now wanting to waive that right, Ms. Tennon?

THE DEFENDANT: Yes.

THE COURT: And you understand that if you enter a plea to the charge and then go to the Court for sentencing – That's the terms of your agreement?

[PROSECUTOR]: Yes, Your Honor.

MR. LEGRANDE: Yes, Your Honor.

THE COURT: If you go to the Court for sentencing, you are waiving your right to appeal the entry of the plea. You will reserve your right to appeal the sentencing portion. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: All right. And then, as to the charge, it's aggregate theft?

[PROSECUTOR]: Yes, Your Honor, first-degree aggregate theft.

THE COURT: Normal range of punishment?

4

[PROSECUTOR]: Yes, Your Honor.

THE COURT: You have been charged with the offense of aggregate theft as a first-degree felony. The range of punishment for a first-degree felony -- You probably want to indicate that on the document that she's signed off on.

(Defense attorney gives paperwork to client.)

THE COURT: The charge being aggregate theft, first-degree felony. The range of punishment for a first-degree felony is 5 years up to 99 or life incarceration in TDCJ Institutional Division and a possible fine up to $10,000. Do you understand the charge itself and the range of punishment?

THE DEFENDANT: Yes.

THE COURT: And you are represented by counsel, correct?

THE DEFENDANT: Yes.

THE COURT: And your counsel's name is --

THE DEFENDANT: Tristan LeGrande.

THE COURT: And has Mr. LeGrande gone over the paperwork that I have in – I'm holding in my left hand? Has he gone over that with you?

THE DEFENDANT: Yes, he has.

THE COURT: To that charge of aggregate theft -- let me back up. Mr. LeGrande, based on your interactions with your client, Ms. Tennon, do you believe her to be competent?

5

MR. LEGRANDE: Yes, Your Honor.

THE COURT: Do you have any information concerning her not being competent?

MR. LEGRANDE: No, Your Honor.

THE COURT: All right. And Ms. Tennon, to that charge of aggregate theft charged as a first-degree felony, how do you plead, guilty or not guilty?

THE DEFENDANT: Guilty.

THE COURT: And are you entering that plea of guilty freely and voluntarily?

THE DEFENDANT: Yes.

THE COURT: Are you pleading guilty because you are, in fact, guilty and for no other reason?

THE DEFENDANT: Yes.

THE COURT: All right.

[PROSECUTOR]: We offer State's Exhibit 1.[2]

---

[2]The prosecutor failed to identify what State's Exhibit 1 was for the record. And then, the court reporter failed to attached State's Exhibit 1 to the reporter's record of the hearing. That said, the Clerk's Record contains only one document marked "State's Exhibit 1." That document is found at page 107-109 of the Clerk's Record. From the context of the hearing on Tennon's plea, it appears the document referred to in the hearing consists of the plea papers tied to Tennon's plea. Tennon signed the plea papers in three places, and the plea papers contain three items, designated by headings: (1) written admonishments, relevant to Tennon's plea; (2) a judicial confession, where Tennon confessed to committing aggregate theft; and (3) a waiver of the right to appeal, where

6

MR. LEGRANDE: No objection.

THE COURT: No objection to 1; that's admitted.

And Ms. Tennon, I'm going to accept your plea of guilty. Is there a possibility of deferred?

[PROSECUTOR]: Yes, Your Honor. That's a possibility.

THE COURT: Counsel, are you requesting that I defer a finding at this time and postpone that decision after a completion of a sentencing hearing?

MR. LEGRANDE: Yes, we are requesting the Court conduct a presentence investigation hearing and I'll be asking if the Court would defer a finding of guilt until punishment is assessed.

THE COURT: Ms. Tennon, accepting your plea of guilty, I will defer a finding at this time and postpone for a sentencing date. I'm assuming a long PSI would be requested which would run anywhere from six to eight weeks out. So, I would ask for you to go ahead and get a date at least eight weeks out.

[PROSECUTOR]: May we request that you find the evidence sufficient to substantiate her guilt?

Tennon waived her right to appeal issues that do not include the issues she has raised here.

Obviously, it would be better if the parties would clearly identify the exhibits they use in hearings by identifying them in ways that describe what the exhibit is in addition to identifying the document by its exhibit number, given that court reporters sometimes omit exhibits that were admitted in hearings from the reporter's record of the proceedings despite the fact that the omission of an admitted exhibit violates the court reporter's duties under the rules. *See* Tex. R. App. P. 34.6(g).

7

THE COURT: Yes. I will make that finding, and the record will speak to it as you did because I'm sure I would not be as eloquent. You can go off now.

(Proceedings concluded.)

Exhibit 1 includes the warnings Tennon received about the consequences of pleading guilty and a judicial confession. Tennon acknowledged both by signing her name on the line below the admonishments and below the judicial confession. By signing the admonishments, Tennon represented: "I, Valeria Johnson Tennon, have reviewed and understand the above indicated admonishments. I am competent and aware of the consequences of the plea." Tennon also signed the judicial confession. It states: "I **JUDICIALLY CONFESSES** (sic) to committing the offense of: **AGGREGATE THEFT; AGGREGATE THEFT** as charged by the indictment[.]"

After Tennon pleaded guilty and the trial court reset the case for sentencing, LeGrande filed five motions, each relevant to matters to be decided in the upcoming hearing the trial court scheduled on Tennon's punishment. Around three months later, and shortly before the punishment hearing in December 2012, LeGrande moved to withdraw as Tennon's attorney. In his motion, he argued he was entitled to withdraw

because he had been notified by the State Bar that Tennon had filed a grievance against him, which the State had dismissed as groundless. And he argued that Tennon had made representing her unreasonably difficult because she had not paid him the fees as she had agreed. Additionally, LeGrande alleged that Tennon had frustrated his efforts to defend her by sending the District Attorney's Office communications he claimed were confidential and privileged. And he represented he had given Tennon notice of his intent to withdraw.

In November 2019, a visiting judge, sitting for the 435th District Court, heard and then denied LeGrande's motion to withdraw.[3] In late November, Tennon filed a pro se letter asking the trial court to allow her to withdraw her plea. When the parties appeared in December for the sentencing hearing, the trial court announced it was going to reschedule the hearing and consider Tennon's pro se request to withdraw her plea. In that hearing, LeGrande told the trial court that Tennon wanted to withdraw her plea for the following reasons: (1) "there's newly discovered

[3]The Reporter's Record of the hearing the trial court conducted on LeGrande's motion to withdraw is not included in the record. That said, the parties have not claimed any evidence from that hearing is relevant to Tennon's claims.

9

evidence[;]" (2) she wanted a jury rather than the court to decide her punishment; (3) she had informed him that on the day she pleaded guilty, she was under a doctor's supervision and "being given psychotropic medication that hindered her ability to comprehend that nature and quality of what she was doing[;]" and (4) she had informed him that "she's experienced head trauma" that "also hindered her ability to appreciate or to be competent to make the plea that was made."[4] In response, the State argued that Tennon was "playing games with this court the same way she was playing games when she changed her plea the day before jury selection."

The trial court noted that the court had admonished Tennon before she pleaded guilty, and that Tennon in pleading guilty had acknowledged that she was entering a knowing and voluntary plea. During the December hearing, the trial court reviewed the transcript of the hearing it conducted in August when Tennon entered her plea. Along with that transcript, the trial court reviewed Tennon's presentence investigation

---

[4]A little later in the hearing, LeGrande told the trial court that the newly discovered evidence was "additional documentation" that was newly discovered "at least as to me, your Honor." And he also said that he understood that when Tennon pleaded guilty, she was taking "clonazepam which is a benzodiazepine drug."

report, noting the report made no mention that Tennon had a problem with taking prescription drugs based on what she told the officer who prepared the report. That said, the trial court also noted the officer who prepared the report had mentioned that Tennon said she had suffered a concussion as a child, a second possible concussion around 2018, and "some possible memory problems." Yet the trial court then noted the report made no mention that Tennon had claimed she was suffering from any long-lasting effects from the trauma she suffered to her head or from taking prescription medicines.[5] And the trial court noted the report did not state that Tennon told the officer that her problems left her unable to function or rendered her without a capacity for understanding. The trial court also examined the drug tests Tennon took while out of jail on bond. In examining those test reports, the trial court noted that Tennon had not tested positive for the presence of clonazepam in any of that testing.

---

[5]The presentence report is not in the Clerk's Record or in the nine Reporter's Records that were filed as the appellate record. For that reason, we have relied on what the trial court stated the presentence report contains when explaining the background. We note that the trial court, when examining the presentence report, appears to have been summarizing the presentence report and does not appear to have been quoting from it.

After the trial court reviewed the information described above, it denied Tennon's request to withdraw her plea. Then the trial court asked if there was anything further. LeGrande responded: "Nothing for the Defense." Although the trial court rescheduled the punishment hearing for January 27, 2020, for reasons not apparent from the record it did not begin until February 19, 2020.

On February 18, LeGrande filed another motion to withdraw. This time, LeGrande alleged Tennon appealed from the dismissal of the grievance, but he noted that Tennon's appeal of the grievance was dismissed in January 2020. Still, LeGrande asserted the conflicts he had with Tennon made representing "her at a sentencing hearing impracticable." In the February 2020 motion, LeGrande alleged Tennon had "refused to cooperate" in preparing for the punishment hearing, and he alleged facts to support that claim.

In February, after opening court, the court announced the case "was set today for sentencing." At the start of the hearing, LeGrande notified the trial court he had filed another motion to withdraw. He explained he filed the motion because Tennon, he said, had refused to cooperate in preparing her defense. Even though she had not cooperated in preparing

12

a defense, however, LeGrande told the trial court he recognized the trial court could require that he continue to represent Tennon in the hearing. He explained that should the trial court deny his motion, he would "do [his] best if the [trial] [c]ourt wants me to remain on the case." Additionally, LeGrande asked the trial court to note that Tennon had filed pro se motions in which she was asking the trial court to consider "reopening [Tennon's] plea or allowing her to withdraw her plea[.]"

After hearing LeGrande on his motion, the trial court denied his motion to withdraw. Then, the trial court turned to Tennon's pro se motions, explaining the court would not address them before conducting the sentencing hearing "because Ms. Tennon is represented by counsel." After that, Tennon interrupted, complaining to the court about her attorney. The trial court cut Tennon off, explaining that it intended to proceed with the sentencing hearing but would allow Tennon an opportunity to speak during the hearing.

After the trial court ruled on the motions filed by Tennon's attorney, the State called its first witness, an investigator in the District Attorney's Office, Erin Smith. Just after the noon recess, Tennon told the court she "no longer want[ed] LeGrande to represent [her,]" alleging he had cursed

her, threatened her, and told her he wasn't going to help her. In response, LeGrande said: "Your Honor, I apologize. My understanding was that Ms. Tennon desired to represent herself pro se. I apologize." Then, the prosecutor said the State wanted the record to show

> the things Ms. Tennon just described [are] not consistent with what's happening in this courtroom. Mr. LeGrande is being professional, and he, in fact, just informed me he intends to cross-examine [the State's first witness, who was still on the stand] and were those things happening in this courtroom, they would be very obvious. The defendant - - while not under oath, is misstating what is going on here.

When Tennon said she no longer wanted to be represented by LeGrande and after the trial court heard LeGrande apologize and heard the prosecutor contest the truth of Tennon's claim, the trial court asked Tennon whether she wanted to represent herself. Tennon responded: "Yes." The trial court advised Tennon about the dangers and disadvantages of self-representation. After Tennon was warned, she confirmed she wanted to represent herself, but she also said "[t]here may be another attorney." In response, the trial asked what Tennon meant. Tennon explained she was meeting with another attorney that evening, and then said, "he may come and finish this up tomorrow." Tennon concluded by stating she intended to "represent myself unless I cannot

14

hire another counsel[,]" explaining she wasn't satisfied with the way she was being "represented and all on this case."

After all that, the trial court asked Tennon about her educational background and occupation. Tennon explained she had finished two years of college and worked in medical sales. When the trial court asked Tennon whether she'd ever been found incompetent by a court or a doctor, Tennon claimed she had been found incompetent, but that she had no documents to support her claim because she had sent them to LeGrande. Next, Tennon told the trial court she felt she needed to be medically evaluated. She claimed a physician had told her the same thing too. And Tennon claimed to be bipolar, and claimed to have "anxiety, PTSD, . . . and [to be] on medication that makes me not remember because it's - - that's what it does."

When the trial court warned Tennon about the dangers of representing herself, Tennon acknowledged she was aware she was charged with aggregate theft, and she could be sentenced to prison for life. And she acknowledged she understood she faced a sentence of five to ninety-nine years or life, and a fine of up to $10,000. Given Tennon's responses, the trial court told Tennon that should she hire an attorney

and if the attorney made an appearance for her in the hearing, the court would allow the attorney to represent her. But that until that occurred, the court was not going to "delay[] the sentencing" and was instead going "forward as scheduled." After warning Tennon of the dangers of representing herself, the trial court asked: "Are you still persisting in self-representation today?" Tennon answered: "Yes." The record also shows that Tennon signed a document, which was filed of record, in which she waived her right to counsel.

The State called three witnesses after Tennon started representing herself. The State called two business owners, who were victims of Tennon's thefts, and then recalled Erin Smith, who investigated the thefts, before declaring a recess for the rest of the day. Tennon cross-examined all three witnesses. And even though the three witnesses were released, all three were subject to being recalled.

After declaring a recess, the trial court took up Tennon's pro se motions since Tennon was now representing herself, her motion for a competency exam and her motion to withdraw her plea. In arguing her motion for a competency exam, Tennon told the court she had seen a psychiatrist, explained she could get records that show she has PTSD and

is bipolar. According to Tennon, these two conditions explain why she takes medication. The trial court denied the motion after reviewing the medical records Tennon attached to it. After reviewing the records attached to the motion, the trial court explained: "I do not see any records attached to the motion that show a doctor has diagnosed you with the condition you mentioned."

Turning to Tennon's motion to withdraw her plea, Tennon argued that others committed the thefts and that she wasn't responsible for them. According to Tennon, individuals who worked for her could have created the business records the State's witnesses were relying on to claim she was responsible for the thefts. And Tennon argued she could prove that individuals who worked for her had access to the computers that were used to send the emails that Erin Smith and the other State witnesses were relying on to claim she committed the thefts. After considering Tennon's argument and the fact that she had pleaded guilty to committing the thefts, the trial court denied Tennon's motion to withdraw her plea and then declared the court in recess for the rest of the day.

The following morning, Tennon advised the trial court that she had hired an attorney, and she now wished to withdraw her waiver of her right to counsel. Noting that a lawyer had contacted the court about Tennon's case, the trial court then said that the lawyer "ha[d] not given the [c]ourt any indication that he ha[d] been retained or that he is the attorney of [] record in the matter." In response, Tennon told the trial court that the meeting she told the trial court that she was planning to have with the attorney she wanted to retain had not occurred.

Then, the trial court asked the State whether it opposed Tennon's request to withdraw the waiver she signed waiving her right to counsel. The State responded that it did not oppose the request. Given the State's response, the trial court allowed Tennon to withdraw the waiver, explaining it was going to grant Tennon's motion to withdraw the waiver because an attorney, Jim Squyers, had contacted the court and indicated that he was negotiating with Tennon over an agreement to represent her and was aware the court intended to resume Tennon's sentencing hearing in "ten days." The trial court told Tennon that even though it would allow her to withdraw the waiver, if she did hire an attorney, the hearing would resume in ten days and "you and your lawyer are not

18

entitled to repeat [any of] the proceedings[.]" After Tennon acknowledged understanding the sentencing hearing would be continued for just ten days, the trial court reset the hearing for March 2.

On March 2, Squyers appeared as Tennon's attorney at the punishment hearing. He announced "not ready" and requested a continuance. Squyers told the court that when Tennon hired him, he was unaware of the "massive amount of discovery involved in the case[,]" and he had "not been able to th[or]oughly go through that discovery." Squyers explained he was not familiar with Tennon's case, and he said he didn't feel he could "effectively represent my client in this matter through cross-examination or – or any other form of witness examination." In response, the trial court noted that on February 19, the court's staff had let Squyers know the court intended to move forward with Tennon's sentencing hearing whether she successfully retained an attorney or not on March 2. Squyers acknowledged he was aware that's what the court intended to do. After Squyers acknowledged taking the case knowing the court intended to proceed with the hearing on March 2nd, the trial court denied his request to continue the hearing.

19

The State called four witnesses before resting its case on March 2. All four of the witnesses were either owners or employees of businesses that were victims of Tennon's thefts. When the State finished examining these witnesses, Squyers asked no questions. Instead, as to each witness, Squyers stated he didn't feel prepared and for that reason had no questions.

When the State rested, Squyers moved for a recess, explaining he needed time "to allow us to get our witnesses so they can testify." The trial court granted the request and continued the hearing until March 5. On March 5, Squyers called two witnesses in Tennon's defense, Tennon and Dr. Thomas Cole Jr.

When Tennon testified, she said she suffers from psychiatric problems, conditions that she claims affect her memory. But Tennon also testified she understood she was in court to be sentenced, and she understood she had pled guilty. Tennon acknowledged she understood she faced a potential life sentence. Tennon testified that currently, she is being treated by Dr. Cole. And she said that Dr. Cole has referred her to a psychiatrist, but she has "not been able to get in because it's, like, scheduled months off and – it's hard for me to be taken off work because

I don't get paid when I'm off[.]" According to Tennon, she's "been on tons of different medications[;]" however, she offered no prescription records to support her claim that she been on tons of medications. When Squyers asked whether Tennon considered herself "smart[,]" she said "I would hope I am."

On cross-examination, Tennon agreed the thefts at issue involved over a million dollars. Tennon admitted that she stole the money from several companies. And she agreed that even though she was claiming to suffer from psychiatric problems, she had never been admitted to a psychiatric hospital. Tennon agreed that she never told Dr. Cole or any of her other physicians that she was involved in a criminal case; instead, she admitted telling Dr. Cole "this is not for any kind of court case." Tennon said she lied to Dr. Cole "because it's personal, and that's not what it was used for."

Tennon's last witness, Dr. Cole, testified he has a general practice in Huntsville and has practiced there for forty-five years. Dr. Cole explained he first saw Tennon in April 2019, and that he had seen Tennon once or twice since then. Based solely on Tennon's history and her subjective complaints, he prescribed clonazepam to treat her for

21

agitation and depression, and he prescribed Namenda for the problems she claimed she had with her memory. But Dr. Cole explained that as to testing her memory, he gave Tennon a St. Louis Mental Status Exam. According to Dr. Cole, the St. Louis Mental Status Exam is commonly used by physicians to test a person's memory. According to Dr. Cole, Tennon scored "just below" normal on her test when he saw her. As to her complaints about her memory, Dr. Cole said she complained "her memory wasn't quite up to par."

On cross-examination, Dr. Cole agreed that Tennon never told him she was under indictment for aggregate theft, a first-degree felony that upon conviction could result in her incarceration for life. And he agreed that in his experience, the prospect of going to prison can cause a person to have feelings of depression, isolation, and anxiety. As to Tennon's history of being bi-polar, Dr. Cole agreed that Tennon's history was solely subjective and that he gave her no objective tests for that condition. Finally, Dr. Cole admitted that he had never seen medical records on Tennon from any other caregivers.

Squyers rested after calling Cole. The State called no witnesses in rebuttal. After the parties presented final argument, the trial court found

Tennon guilty and pronounced her sentence—seventy-years' confinement in the Texas Department of Corrections, Institutional Division. In addition to the punishment, the trial court advised Tennon it was ordering restitution in amounts set out in an exhibit attached to the judgment, which total in excess of one million dollars.

After the trial court pronounced sentence, Squyers notified the trial court that the day before, he had filed a motion for new trial. In the motion, which was unsworn, Squyers alleged that he had spoken to a potentially exculpatory witness, Denis Temple, whom he alleged had "taken responsibility" for Tennon's "crimes." Squyers alleged that he had not yet had the opportunity to "properly investigate Temple's statements[,]" and he argued that LeGrande's failure to call Temple in the "innocence/guilt portion of [Tennon's trial] . . . is in fact ineffective assistance of counsel."

## Analysis

### *Withdrawing a Guilty Plea*

In Tennon's first issue, she argues the trial court abused its discretion when it refused her requests to withdraw her plea. On appeal, Tennon does not argue she was not properly admonished of the

23

consequences associated with pleading guilty, as required by article 26.13 of the Code of Criminal Procedure.[6] Instead, she claims the trial court should have found she did not knowingly and voluntarily plead guilty because the medications she was taking for the psychiatric conditions has deprived her of her capacity to understand the consequences of her plea.

The record shows that before pleading guilty, Tennon acknowledged she understood the charge and the range of punishment that applied if convicted of aggregate theft—five to ninety-nine years imprisonment and a fine not to exceed $10,000.[7] Tennon also signed plea admonishments, acknowledging "I am competent and aware of the consequence of the plea." Last, Tennon signed a judicial confession, admitting that she committed the offense as alleged in the indictment and that she was guilty of that offense.

When the defendant voluntarily pleads guilty to an indictment, the defendant may withdraw the plea "as a matter of right without assigning reasons until such judgment has been pronounced or the case has been

---

[6]*See* Tex. Code Crim. Proc. Ann. art. 26.13(a).
[7]*See* Tex. Penal Code Ann. § 12.32.

24

taken under advisement."[8] A case is considered to have been taken *under advisement* when the record shows the trial court (1) admonished the defendant of the consequences of pleading guilty, (2) received the defendant's plea and evidence establishing the defendant's guilt, and (3) the court continues the case, pending receipt of a report from a probation officer regarding the probation department's recommendations on a sentence.[9] So while a defendant may no longer withdraw their plea as a matter of right when the trial court has taken the case under advisement, the trial court may (but is not required) allow the defendant to withdraw the plea even after it has taken the case under advisement.[10]

In Tennon's case, the record reflects that the trial court admonished Tennon of the consequences of pleading guilty, received her plea and evidence that established her guilt, and took the case under advisement while awaiting a probation officer's investigation and report addressing

---

[8]*Jackson v. State*, 590 S.W.2d 514, 515 (Tex. Crim. App. 1979); *Barlow v. State*, No. 09-17-00027-CR, 2018 Tex. App. LEXIS 1703, at *4 (Tex. App.—Beaumont Mar. 7, 2018, no pet.) (mem. op., not designated for publication).

[9]*See DeVary v. State*, 615 S.W.2d 739, 740 (Tex. Crim. App. 1981); *Stewart v. State*, 680 S.W.2d 513, 514 (Tex. App.—Beaumont 1984, pet. ref'd); *Houston v. State*, 201 S.W.3d 212, 218 (Tex. App.—Houston [14th Dist.] 2006, no pet.).

[10]*See Jackson*, 590 S.W.2d at 515; *Stewart*, 680 S.W.2d at 514.

Tennon's sentence. Even though Tennon argues on appeal that the trial court did not hear any evidence when it conducted the hearing on her plea because no witnesses were called to testify during the hearing, that does not mean there was not sufficient evidence introduced in the hearing to support her plea of guilt since she signed a judicial confession (State's Exhibit 1). "It is well settled that a judicial confession, standing alone, is sufficient to sustain a conviction upon a guilty plea, . . . and to satisfy the requirements of Article 1.15[.]"[11]

It follows that in November 2019, when Tennon filed her first two pro se motions seeking to withdraw her plea, and in March 2020, when Squyers filed a motion for new trial and asked the trial court to allow Tennon to withdraw her plea, Tennon no longer had an unrestricted right to withdraw her plea. Instead, the trial court had the discretion to either allow or to deny her request, so long as denying her request was not an abuse of discretion.

---

[11]*Dinnery v. State*, 592 S.W.2d 343, 353 (Tex. Crim. App. 1980) (op. on reh'g); Tex. Code Crim. Proc. Ann. art. 1.15; *see also Ex parte Smith*, 296 S.W.3d 78, 79 (Tex. Crim. App. 2009) (noting "that the applicant judicially confessed to committing the offense, which was sufficient evidence to support a plea of guilty").

On appeal, Tennon contends the trial court abused its discretion in denying her request because the medicines she was taking due to her anxiety and bi-polar condition kept her from understanding the nature and consequences of her plea. But the trial court denied her motion and rejected these claims. When a trial court denies a motion to withdraw a plea, the appellate court gives the trial court a first-hand, factual assessment on whether the defendant was competent to enter a valid plea in the appeal.[12]

In addition to the trial court's first-hand assessment, Texas law presumes that a defendant is "competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence."[13] To establish a defendant is incompetent, the defendant must establish they do not have a "sufficient present ability to consult with [their] lawyer with a reasonable degree of rational understanding[,]" or they do not have "a rational as well as factual understanding of the proceedings against [them]."[14] "When a defendant enters into a plea, attesting that she understands the nature of her plea and that it is being

---

[12]*Ross v. State*, 133 S.W.3d 618, 627 (Tex. Crim. App. 2004).
[13]Tex. Code Crim. Proc. Ann. art. 46B.003(b).
[14]*Id.* art. 46B.003(a).

made knowingly and voluntarily, she has the burden on appeal to show that her plea was involuntary."[15] In Tennon's case, the question for us is whether Tennon has carried her burden to demonstrate that her plea was involuntary.

When the trial court conducted the hearing on Tennon's plea, no one—not Tennon, Tennon's attorney, or anyone else—suggested Tennon lacked the competence to enter a valid plea. On the contrary, Tennon's attorney represented he had no information indicating Tennon was not competent. And Tennon signed plea papers stating: "I am competent and aware of the consequences of the plea," and she signed a judicial confession to the offense of aggregate theft.

When Dr. Cole testified, he never said that the medications he prescribed had interfered with Tennon's capacity to enter a knowing and voluntary plea in August 2019. And he never testified that Tennon's psychiatric problems, which he admitted were based solely on the history she provided, would have kept Tennon from understanding the nature and consequences of the proceedings that occurred in the hearing on Tennon's plea. He also did not say that the problems she had with her

---

[15]*Briggs v. State*, 560 S.W.3d 176, 187 (Tex. Crim. App. 2018).

memory were sufficiently severe that would have, in his opinion, interfered with the capacity to understand the nature and consequences of pleading guilty to a felony that could result in a lengthy sentence of up to life.

Finally, in the hearings the trial court conducted on Tennon's motions, the trial court examined the records that were available to the trial court and determined they were inconsistent with Tennon's underlying allegation that she was overly medicated in August 2019 when she entered her plea. After examining the records that were available to the court, which included drug testing, the transcript of the hearing in August, and Tennon's representations in court and in the plea papers that she was knowingly and voluntarily pleading guilty, the trial court denied Tennon's motions because the drug testing and evidence did not support her claim.

Having viewed the record as a whole, we hold the trial court did not abuse its discretion in denying Tennon's motions to withdraw her plea.[16] We overrule Tennon's first issue.

---

[16]*See Briggs*, 560 S.W.3d at 187.

*Effective Assistance of Counsel*

In Tennon's second issue, she argues that LeGrande and Squyers provided her ineffective assistance of counsel. On appeal, Tennon argues both of the attorney's she retained to represent her on her case were ineffective. Since Tennon must show the punishment verdict would have been more favorable but for counsels' errors, we will address most of her complaints about LeGrande and Squyers together.[17] That said, she complains that Squyers was ineffective because he didn't subpoena Denis Temple to testify in support of the allegations he made in his motion for new trial. Because we resolve that complaint in a manner different from her other complaints, we will address it last.

As to LeGrande, Tennon argues her ability to communicate with him broke down before her sentencing hearing occurred over a dispute about her payment of his fees. According to Tennon, the dispute erupted on the first day of the sentencing hearing when LeGrande told Tennon he was not going to cross-examine Smith or help her further in the hearing. And Tennon contends the attorney-client relationship was compromised even before the sentencing hearing occurred over the

---

[17]*Pham v. State*, 639 S.W.3d 708, 713 (Tex. Crim. App. 2022).

dispute centering on her payment of his fees, which ended up depriving her of her right to effective assistance of counsel in the punishment hearing.

As to Squyers, Tennon argues that after the trial court denied Squyers' request to continue her sentencing hearing, the record shows he was unprepared. She notes he failed to cross-examine any of the witnesses the State called on the second day of her sentencing hearing. Additionally, Tennon claims that when Squyers presented her punishment evidence on the third day of the hearing, he failed to subpoena Denis Temple, whom she argues "held promises of being exculpatory" as to the thefts.

We recognize, of course, that defendants have a Sixth Amendment right to the effective assistance of counsel.[18] But to establish a claim for ineffective assistance of counsel, a defendant must meet the two-pronged *Strickland* test.[19] To meet that test, the record must show (1) deficient performance by the defendant's attorney and (2) prejudice.[20] Since

---

[18]U.S. CONST. amend. VI; *Strickland v. Washington*, 466 U.S. 668, 684-85 (1984).

[19]*Strickland*, 466 U.S. at 687; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

[20]*Strickland*, 466 U.S. at 687.

Tennon complains about punishment-stage errors in her appeal, she must demonstrate a reasonable probability exists "that, but for counsel's errors, the [factfinder] would have reached a more favorable verdict."[21]

Assuming for sake of discussion that the fact that neither LeGrande, nor Squyers cross-examined any of the State's witnesses constitutes deficient performance, we must still determine whether a reasonable probability exists to believe that but for these errors, the outcome in the hearing would have been different.[22] In her appeal, Tennon offers no explanation about how their failure to cross-examine these seven witnesses would have led to a more favorable result; instead, all she says is that she was harmed because both of her attorneys "declined to cross-examine witnesses, albeit for different reasons."

Of the seven witnesses the State called over the course of what turned out to be a three-day hearing, six of them represented businesses, which were victimized by Tennon's thefts. The remaining witness, Erin Smith, works as an investigator for the Montgomery County District Attorney's Office. She testified she played a "large role" in investigating

---

[21]*Pham v. State*, 639 S.W.3d at 713.
[22]*Ex parte Rogers*, 369 S.W.3d 858, 863 (Tex. Crim. App. 2012).

Tennon's case. She described the scheme Tennon used to commit the thefts, the amounts stolen, and the victims involved. Despite the fact that LeGrande didn't cross-examine Smith, Tennon admitted in the punishment hearing, just as she did during her plea, that she was guilty of the aggregate theft as alleged in the indictment. The remaining witnesses who testified in the punishment proceedings described but a small part of the overall thefts of money that Tennon acquired in her scheme. These witnesses merely described a small part of the overall amounts that Tennon pleaded guilty to stealing, and how she accomplished some of the thefts. We assume the reason Tennon's attorney did not include a more specific harm argument in her appeal is that he could not explain how the cross-examination of these witnesses would have led to a more favorable result. In the end, Tennon cannot prevail in her appeal by merely suggesting that a possible punishment-stage error—LeGrande's and Squyer's abandonment of their duties to cross-examine witnesses—conceivably adversely affected her sentence.[23]

In the punishment hearing, the trial court also heard testimony that shows Tennon had previously been convicted of three other theft-

---

[23]*Id*.

related offenses and received deferred adjudication on two others. We have summarized the evidence that shows Tennon's prior criminal history in the table below:

| Offense | Judgment | Sentence | Reporter's Record |
|---|---|---|---|
| Theft of rental property (third-degree felony) | May 24, 1991 | Five years' deferred adjudication | 9 Reporter's Record, 320-325 |
| Theft (class B misdemeanor) | February 3, 2000 | Time served | 9 Reporter's Record, 326-334 |
| False representation of social security account number | February 8, 2001 | Four years' probation (plus restitution) | 9 Reporter's Record, 335-339 |
| Theft by check (class B misdemeanor) | August 24, 2006 | Fine only | 9 Reporter's Record, 340-342 |
| Debit/credit card abuse (state jail felony) | September 28, 2012 | Four years' deferred adjudication (plus fine and restitution) | 9 Reporter's Record, 343-349 |

In deciding upon a sentence, the trial court was entitled to consider Tennon's criminal history. And on appeal, Tennon does not argue that LeGrande or Squyers could have undermined this evidence had they cross-examined the State's witnesses either.

Last, we turn to Tennon's complaint that Squyers failed to call Denis Temple to testify in the hearing on Tennon's motion for new trial. In her appeal, Tennon argues that Squyers "needed to use whatever means available to get [Denis Temple] into court." She concludes that Squyers "should have used his time to subpoena [Temple][,]" concluding that his failure to do so was ineffective.

Unlike the ineffective assistance of counsel claims addressed above, we will not assume Squyers performed deficiently in deciding whether Tennon has established ineffective assistance of counsel based on both prongs of *Strickland*.[24] Instead, we evaluate this claim by determining whether the record is sufficient to establish that Squyers' representation was so deficient and lacking in tactical or strategic decision making as to overcome the presumption that counsel's conduct was reasonable and professional."[25] In direct appeals like the appeal before us here, the record developed in the trial court is usually not sufficiently developed to establish that a defendant's attorney's performance was deficient.[26] And before the attorney who represented the defendant is criticized in the appeal for performing deficiently in the trial, the

---

[24]*Strickland*, 466 U.S. at 687.
[25]*Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002).
[26]*Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012).

35

attorney "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective."[27] When the trial attorney was not given that opportunity in the trial, the appellate court should not find deficient performance unless the conduct being challenged is "so outrageous that no competent attorney would have engaged in it."[28]

Squyers' motion for new trial alleging he had spoken to a "potentially exculpatory witness" is unsworn. And in the motion, Squyers never alleged that either he or LeGrande knew about Temple when Tennon entered her plea. We have reviewed the Reporter's Records of the hearings, and Tennon never once mentions Temple in any of those hearings. Squyers may also have offered a valid excuse for not serving Temple with a subpoena had he been given the opportunity to answer Tennon's complaint about him in a hearing. It's possible that Squyers didn't know where Temple lived or where he worked when he filed the motion and when the hearing on the motion for new trial occurred. And there's nothing in the record that shows what Temple would have said had he been placed under oath, so we don't know that his testimony would have bene exculpatory had he been called.

---

[27]*Id.* (quoting *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)).

[28]*Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

In the end, the record in Tennon's direct appeal is insufficient to establish that Squyers performed deficiently in failing to subpoena Temple to the hearing on the motion for new trial.[29] For all these reasons, Tennon's second issue is overruled.

Conclusion

Having overruled Tennon's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on November 29, 2021
Opinion Delivered August 10, 2022
Do Not Publish

Before Golemon, C.J., Horton and Johnson, JJ.

---

[29] *Strickland,* 466 U.S. at 689; *Rylander,* 101 S.W.3d at 111.